UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ODETTE LANGER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 5226 |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Board of Education of the City of Chicago's motion to dismiss [38] Plaintiff Odette Langer's nine-count amended complaint in its entirety. For the reasons set forth below, the Court grants the motion with respect to Plaintiff's Title VII claims of age, race, and religious discrimination (Counts I-III), "lack of investigation" (Count VII), and harassment by Aviles (Count VIII). The Court denies the motion as to other counts. Plaintiff may proceed with her claim of race discrimination under § 1981 (also Count I), as well as her claims for breach of contract and/or a federal due process violation (Counts IV, V, VI, and IX). The Court denies Plaintiff's motions to deny the Board's motion to dismiss [41 and 44].

**I.  Background**

    **A.  Plaintiff's Motions to Deny the Board's Motion to Dismiss**

Plaintiff has filed two motions asking the Court to deny Defendant's motion to dismiss because the second motion to dismiss that was filed—which the Court gave Defendant leave to put on the docket for internal, record-keeping purposes—was not identical to the first motion to dismiss. Upon receiving notice of Plaintiff's motions, counsel for the Board promptly filed a

response, which explained her inadvertent error (noting that it was never the Board's intention to file anything other than the previously-filed motion to dismiss), attached the original motion to dismiss filed on December 19, 2011, apologized for the mistake, and respectfully requested "that the Court only consider and rule upon that identical Motion to Dismiss." The Court appreciates defense counsel's candid explanation and will focus its attention on the original motion to dismiss as well as Plaintiff's original response and Defendant's reply. The Court denies Plaintiff's motions to deny the Board's motion to dismiss [41 and 44].

      **B.**      **Relevant Facts Alleged in Plaintiff's Amended Complaint**

The factual background is drawn from Plaintiff's amended complaint. At this stage in the proceedings, the Court assumes all well-pled allegations to be true and draws all reasonable inferences in Plaintiff's favor. See *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff has been working for the Board of Education of the City of Chicago ("Board") since 1967. Beginning in 2007, Plaintiff was hired as the principal of Barry Elementary School ("Barry"). Plaintiff's amended complaint details several grievances she has arising out of (i) the end of her employment at Barry and (ii) her relationship (or lack thereof) with Local School Council ("LSC") member Edilberto Aviles.[1] According to Plaintiff, Mr. Aviles did not like Plaintiff because she is Jewish and he preferred to have a Hispanic principal. Plaintiff alleges that Mr. Aviles waged a ruthless campaign to have her removed as Barry's principal, including sending derogatory e-mails to school officials and refusing to attend or vote at meetings that either involved Plaintiff or that Plaintiff requested.

---

[1] The Local School Council is a statutorily created body with responsibilities that include approving how school funds and resources are allocated, approving and monitoring the implementation of the annual school improvement plan, and hiring and evaluating the school's contract principal. See, *e.g.*, *Fennerty v. Board of Educ. of City of Chicago*, --- F. Supp. 2d ---, 2013 WL 2477071, at *2 (N.D. Ill. June 10, 2013).

During the 2007-2008 school year, Plaintiff's first as principal, Barry was on probation. Plaintiff disagreed with the decision to place the school on academic probation due to its low test scores. During her second year, the school's "performance score" increased by 17%. Plaintiff alleges that during her tenure, Barry continued to improve and earned the Board's highest excellence performance level. Defendant paints the facts in a different light—for instance, that even with slight improvement, only 63.2% of Barry students met the standard requirements, which ranked Barry second to last on the value-added ranking—but for purposes of Defendant's motion to dismiss, the Court credits Plaintiff's allegations that the school improved during her tenure.

On January 12, 2010, Joseph Kallas, the Area Instructional Officer in charge of Barry Elementary School, allegedly told Plaintiff that she was not a strong enough leader and that the test scores were still not satisfactory. According to Plaintiff, Kallas threatened to fire Plaintiff and damage her reputation. He also discussed the procedures that could lead to her removal. At this time, Plaintiff asked if she could retire at the end of the school year. Plaintiff then wrote a letter to Kallas on January 12, 2010 that read, in pertinent part:

> After our discussion and agreement I am giving you notice that I will retire at the end of the 2009-2010 school year * * * On the date you receive this letter, please mail to me your confirmation that you are allowing me to retire at the end of the 2009-2010 school year.

Pl.'s Exhibit 28. The following day, Kallas e-mailed Plaintiff stating, in full, "I received, via certified mail, your notice of retirement. Please remember that all CPS/CTPF paperwork should be completed as soon as possible. This will be allowed, without any further action, provided paperwork is completed in a timely manner." Pl.'s Exhibit 29.

On February 24, 2010, Kallas spoke with Plaintiff and told her that he still had not received the paperwork. Plaintiff said that she did not submit any because she was not retiring.

3

Kallas allegedly responded that he would have her fired and then tell the staff, the LSC, and parents. Further, Plaintiff claims that Kallas said that her termination would make the newspaper and she would lose her pension. The next day, Plaintiff sent Kallas a letter that stated, "I am rescinding my previous letter's statement that I will retire at the end of the 2009-2010 school year. I will continue to work for the good of Barry School." Pl.'s Exhibit 30. Kallas responded on the same day with a letter that stated, also in full, "Per your letter dated January 12, 2010 (attached), your last day as principal of Barry Elementary School will be June 30, 2010." Pl.'s Exhibit 31.

On June 10, 2010, the LSC held a meeting to complete Plaintiff's performance evaluation and, according to Plaintiff, rated her as exceeding the standard. Aviles did not attend the meeting and instead sent another e-mail to the chairperson of the LSC, who forwarded it to Kallas. Aviles accused Plaintiff of falsifying her accomplishments, harming the children, teachers and community, and losing control over the school budget.

On June 14, 2010, Plaintiff sent a letter to Kallas defending herself against Aviles's accusations, stating that Aviles "knew of me, that I was not of his ethnicity or religion because I was always absent on certain religious holidays * * * It is my belief that Mr. Aviles['s] actions toward me are discriminatory." Pl.'s Exhibit 25. On June 29, 2010, Plaintiff's penultimate day with Barry, Plaintiff wrote to the CEO of CPS to say that she had not validly retired from her position. Plaintiff did not receive a response, nor was she able to receive any information concerning her termination.

According to Plaintiff, in June 2010, all four of the schools neighboring Barry rated lower in performance and none of their principals had been terminated. Two of the principals were Hispanic and one was younger than Plaintiff. Nancy Adela Paullette, a Hispanic, non-Jewish,

4

younger principal from Sabin School replaced Plaintiff. According to Plaintiff, Sabin had the Board's lowest performance evaluation rating.

Plaintiff completed an EEOC Intake Questionnaire on April 11, 2011. Pl.'s Exhibit 1. Sometime between April 14, 2011 and April 18, 2011, Plaintiff created a document entitled "EEOC BASIS" and submitted an EEOC Charge of Discrimination.[2] Pl.'s Exhibit 1, 2; Def's Exhibit A. In her EEOC Charge, she claimed that the Board discriminated against her for race, age, national origin, and religion:

> I began my employment with Respondent in January 1967. My most recent position was Principal. During my employment, I was coerced into involuntarily retiring. I was not allowed to rescind my retirement letter and was replaced by a substantially younger, Hispanic, non-Jewish employee. This has caused a loss in my pension benefits.
>
> I believe that I have been discriminated against because of my race, White, and my religion, Jewish, in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> I believe that I have been discriminated against because of my age, 66, (DOB: March 21, 1945) in violation of the Age Discrimination in Employment Act of 1967, as amended.

Def.'s Exhibit A. In her Intake Questionnaire, she stated that her "[i]mmediate supervisor threatened to file charges with Chicago Public School in that State test scores had not gone up

---

[2] Plaintiff does not attach a copy of her EEOC Charge to her amended complaint. However, in her amended complaint she alleges that she "filed a charge complaint with the Equal Employment Opportunity Commission ("EEOC") on April 14, 2011" as well as two additional pages "for attachment on April 18, 2011." In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings; however, it is well-settled that the Court "may consider documents attached to or referenced in the pleading if they are central to the claim" (see *Citadel Grp. Ltd. v. Wash. Reg'l Med. Cir.,* 692 F.3d 580, 591 (7th Cir. 2012)), such as EEOC charges. See *Hall v. Walsh Constr. Co.,* 2012 WL 3264921, at *1 n.4 (N.D. Ill. Aug. 9, 2012) (collecting cases); see also *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013) (considering EEOC charge and affirming 12(b)(6) dismissal of defendant not named in EEOC charge); *Rogers v. Community Care Systems*, 2013 WL 4482692, at *3 (C.D. Ill. Aug. 20, 2013). Here, Plaintiff attached a copy of the EEOC Charge, which was received by the EEOC's Chicago District Office on April 18, 2011, to her original complaint. In the 105 pages of her amended complaint and attachments, she omitted the charge, but the Court concludes that the EEOC Charge is both referenced in the pleading and central to her claims and, additionally, is part of the record as it was attached to Plaintiff's original complaint.

fast enough. (This was not true.) * * * [He] [t]hreatened to have my name smeared and printed in the newspapers." Pl.'s Exhibit 1. The EEOC issued Plaintiff a "right to sue" letter on April 27, 2011. Pl.'s Exhibit 2.

On August 1, 2011, Plaintiff filed this lawsuit against Defendant Board of Education of the City of Chicago. On November 29, 2011, Plaintiff filed a nine-count amended complaint. Count I alleges that Plaintiff was discriminated against for not being Hispanic; Count II alleges discrimination on the basis of her age; and Count III alleges religious discrimination because Plaintiff is Jewish. In addition, Count VII claims discriminatory acts by LSC member Aviles, who was not a Board employee, and Count VIII alleges harassment by Aviles. Finally, Counts IV, V, VI and IX allege that the Board breached Plaintiff's four-year contract in derogation of the Illinois School Code and any due process rights afforded.

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P.8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint. *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

### A. Title VII and ADEA Claims Against the Board (Counts I-III)

Defendant has moved to dismiss Counts I (race discrimination), II (age discrimination), and III (religious discrimination) because Plaintiff's EEOC charge was untimely. Specifically, Defendant contends that Counts I-III are untimely because Plaintiff pleads that her "coerced" agreement to retire was dated January 12, 2010, and, additionally, she was not allowed to "rescind" her retirement letter as of February 25, 2010. Defendant maintains that since Plaintiff waited more than a year to file her EEOC Charge, it was untimely as to both her allegedly "coerced" agreement to retire, as well as her attempt to rescind it.

For a Title VII claim, a plaintiff has 300 days from the alleged discriminatory action to file a complaint with the EEOC.[3] 42 U.S.C. § 2000e-5(e)(1); see, *e.g.*, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 104-105 (2002); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Similarly, an employee may sue under the ADEA only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful

---

[3] The 300 day time limit imposed on an ADEA plaintiff "operate[s] akin to [a] statute of limitation, rather than as a jurisdictional requirement [ ]." *Delgado v. Certified Grocers Midwest, Inc.,* 2006 WL 2873215, at *2 (N.D.Ill. Oct. 5, 2006) (citing *Rennie v. Garrett,* 896 F.2d 1057, 1062 (7th Cir. 1990); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). In general, a statute of limitations defense is an affirmative defense that is not susceptible to disposition on a Rule 12(b)(6) motion to dismiss. However, "a statute of limitations defense [raised in a motion to dismiss] is appropriate where, [as here,] 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Adonissamy v. Hewlett–Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005)); see also *Owens v. City of Chicago,* 2009 WL 2778079, at *5 (N.D. Ill. Aug. 31, 2009).

employment practice. See 29 U.S.C. § 626(d)(2); *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 636 (7th Cir. 2004); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995). The issue is deciding when the 300-day time limit begins. Congress has decided that time limitations periods commence with the date of the "alleged unlawful employment practice." *Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980) (quoting 42 U.S.C. §2000e-5(e)). In *Ricks*, the Court evaluated the timeliness of a professor's EEOC complaint. 536 U.S. at 112. Following the decision to deny the professor tenure, the employer offered him a terminal contract to teach for one additional year. *Ricks*, 449 U.S. at 253. The professor argued that the time period did not begin to run until his actual termination. *Id*. at 257. The Court rejected this argument, stating "[m]ere continuity of employment, without more, is insufficient to prolong the life of the cause of action for employment discrimination." *Id*. Thus, the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences became the most painful. *Id*. (internal quotations and citations omitted); see, *e.g.*, *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) ("The 300-day limit * * * begins to run when the defendant has taken action that injures the plaintiff and when the plaintiff knows she has been injured, not when she determines that the injury was unlawful"); *Thelen*, 64 F.3d at 267 ("A plaintiff's action accrues when he discovers he has been injured, not when he determines that the injury was unlawful"); *Carlisi v. Metropolitan*, 2010 WL 4628680, *5 (N.D. Ill. Nov. 8, 2010) ("Plaintiff was immediately aware of the circumstances of his forced resignation. There is no reason why Plaintiff could not have filed an EEOC at some point within the 300 days following this event").

Plaintiff maintains that her ADEA and Title VII claims are not time barred under the "continuing violation" doctrine. This is an exception to the 300–day charging period that

"allow[s] a court to consider acts that occurred outside of the limitations period if 'related closely enough' to the acts occurring within the established time frame 'to be considered one ongoing violation.'" *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n. 6 (7th Cir. 2009) (quoting *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395–96 (7th Cir. 1999)). The Seventh Circuit described the doctrine as somewhat of a misnomer because "[d]espite its name, it is a doctrine about cumulative rather than continuing violation." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008) rev'd on other grounds by ––– U.S. –––, 130 (2010); see also *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). In *Lewis*, the Seventh Circuit explained that the "doctrine of continuing violation allows you to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based." 528 F.3d at 493 ("A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior. And then the entire series is actionable"); see also *Stepney v. Naperville School Dist.* 203, 392 F.3d 236, 240 (7th Cir. 2004) ("The doctrine applies to claims like sexual harassment * * * [because] [i]n those cases, duration and repetition are necessary to convert merely offensive behavior into an actionable change in the plaintiff"'s working conditions"). "To succeed under a continuing violation theory, [the plaintiff] must demonstrate that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged discrete acts of discrimination occurred within the relevant limitations period." *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 604 (7th Cir. 1992) (citing *Stewart v. CPC Intern., Inc.*, 679 F.2d 117, 121 (7th Cir. 1982) ("At least one discriminatory act must have occurred within the charge-filing period")).

9

Plaintiff argues that a continuing practice of discrimination was ongoing from the time that she became principal at Barry. Plaintiff's allegations simply do not support such an interpretation. The alleged unlawful discriminatory practice in this case is Plaintiff's forced resignation. Thus, the EEOC charging period accrued either on January 12, 2010, when Plaintiff claims she was coerced into retiring, or, at the latest, when Kallas denied Plaintiff's attempt to rescind her agreement on February 25, 2010. The letters and e-mails make clear that Kallas made a final, ultimate, and non-tentative decision to hold Plaintiff to her agreement to terminate her employment when he did not allow her to rescind the letter. Additionally, the correspondence attached by Plaintiff to her complaint gave Plaintiff unequivocal notice of that termination. See *Flannery*, 354 F.3d at 637 ("In discriminatory discharge cases, two elements are necessary to establish the date on which the unlawful employment practice occurred. First, there must be a final, ultimate, non-tentative decision to terminate the employee. * * * Second, the employer must give the employee unequivocal notice of its final termination decision") (internal quotations omitted). Plaintiff's claim accrued on that date because Plaintiff was immediately aware that the Board injured her, and not on June 30, 2010, when the consequences of that injury became the most painful. As in *Carlisi*, Plaintiff was made immediately aware of the circumstances of her forced resignation and offers no reason why she could not have filed an EEOC charge at some point within 300 days following this event. Instead, there are over 400 days between the latter, February 25, 2010 date and Plaintiff's EEOC Charge, filed on April 18, 2011,[4] well beyond the charging period. Thus, Plaintiff's Title VII and ADEA claims against the Board are dismissed as untimely.

---

[4] In her response brief, Plaintiff argues that she filed her EEOC charge on April 14, 2010, a full year earlier than its actual date of filing. Pl.'s Resp. at 7 and 9. That assertion is clearly contradicted by Plaintiff's original complaint, amended complaint, and documents attached to both complaints. Ironically, Plaintiff alleges the fictitious filing date on the same page in which she refers to Federal Rule

B.   **42 U.S.C. § 1981**

Count I of Plaintiff's amended complaint alleges employment discrimination under both Title VII and 42 U.S.C. § 1981. See Am. Compl. at 1. Defendant did not address Plaintiff's § 1981 claim in its motion to dismiss. Thus, Plaintiff's claim for race discrimination under § 1981—which addresses only racial discrimination in contractual relationships, including making, enforcing, performing, modifying, and terminating a contract—survives. 42 U.S.C. § 1981(a)-(b); see *Sims v. Trinity Services, Inc.*, No. 12-cv-9398, 2013 WL 3270665, *3 (N.D. Ill. June 26, 2013).

C.   **Counts VII and VIII**

Defendant argues that Counts VII ("No investigation on Plaintiff's discrimination charges by the Board's Discrimination Department") and VIII ("Harassment" by Aviles) should be dismissed because they are beyond the scope of the EEOC charge and not actionable against the Board. Additionally, Plaintiff has not sued Aviles or the Local School Council; Defendant Board of Education of the City of Chicago is the sole defendant.

The scope of a judicial proceeding subsequent to an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The limitation, like statutory limitations, is not jurisdictional, but is a condition precedent to recovery. See *id.* & n. 20. "To determine whether the allegations fall within the scope of the earlier EEOC charge," a court must decide whether "the allegations are like or reasonably related to those contained in the [EEOC] charge." *Kerstig v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the

---

of Civil Procedure 11. The Court reminds Plaintiff of *her* obligations under Rule 11.

11

employer to settle the dispute. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Nonetheless, the standard is a liberal one. *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525-526 (7th Cir. 2008). Claims are reasonably related – and hence properly raised in a subsequent lawsuit – "if there is a factual relationship between them." *Kersting*, 250 F.3d at 1118. The factual information provided in the charge is "[m]ore significant than "technical defect[s]." *Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999); *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003) (noting that "we do not rest our decision here on an omitted checkmark"). In short, the pertinent inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi*, 336 F.3d at 527.

The Court agrees with Defendant that allegations against Aviles (and his alleged discriminatory acts toward Plaintiff) are beyond the scope of the EEOC charge. Nowhere does Plaintiff mention Aviles or the LSC in her EEOC questionnaire, the "EEOC BASIS" document, or the EEOC charge itself. Instead, the documents refer specifically to Plaintiff's allegedly "forced" retirement, her interactions with Mr. Kallas, Kallas' threats, and her teaching and leadership accolades. These documents could not provide notice to the Board that Plaintiff was seeking to charge them with misconduct on the part of Aviles and LSC, failure to investigate that misconduct, or harassment on the part of Aviles. Because Plaintiff's EEOC charging documents did not give the Board fair notice of the substance of Counts VII and VIII, those counts are dismissed.

### D. Counts IV, V, VI, IX

Each of Plaintiff's remaining counts concern her renewable four-year employment contract as principal of Barry School: "Breach of four year renewable employment contract without due process" (Count IV); "Fraudulent breach of four year renewable employment

12

contract without due process" (Count V); "Failure to act on evidence that there was no valid notice of retirement; that the board improperly terminated Plaintiff's employment and that its Chief Area Officer in effect was falsifing [sic] records, and denial of due process by not carrying through proper procedures to resolve these issues" (Count VI); and "Improper rating of performance and knowingly making false statements and committing fraud to have her employment terminated without due process" (Count IX). Defendant's sole argument for dismissal of these claims is that they are pendant state law claims.

It appears as if Plaintiff is alleging, in regard to her employment contract, both a state law breach of contract claim and a federal due process violation. See Compl. at 1 ("Plaintiff further brings this action in regard to denial of property rights, a subject of the Fourteenth Amendment and brings this action under the requirements of Illinois State law."). Defendant requests that the Court dismiss these counts as exclusively pendant state law claims. However, Plaintiff's federal race discrimination claim (Count I) under 42 U.S.C. § 1981 survives Defendant's motion to dismiss. Thus, the Court retains supplemental jurisdiction of the remaining state law claims pursuant to 28 U.S.C. 1367(a). Additionally, Defendant did not challenged Plaintiff's federal due process violation in the motion to dismiss. "Plaintiffs may assert a violation of the Due Process Clause if they are able to show that they had a 'property interest' and they were deprived of that interest without due process of law." *Lance v. Betty Shazz Int'l School*, 2013 WL 445129, *4 (N.D. Ill. Feb. 5, 2013) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th. Cir. 2003)) (citing *Bishop v. Wood*, 426 U.S. 341, 343 (1976)); see also *Moulton v. Vigo Cnty.*, 150 F.3d 801, 804 (7th Cir. 1998). Thus, at this time, Counts IV, V, VI, IX of Plaintiff's amended complaint survive, although the Court notes that these four counts appear duplicative of one another.

**IV.     Conclusion**

For these reasons, the Court grants in part and denies in part Defendant's motion to dismiss [38]. The Court grants the motion with respect to Plaintiff's Title VII claims of age, race, and religious discrimination (Counts I-III), "lack of investigation" (Count VII), and harassment by Aviles (Count VIII). The Court denies the motion as to other counts. Plaintiff may proceed with her claims of race discrimination under § 1981 (also Count I), as well as her claims for breach of contract and/or a federal due process violation (Counts IV, V, VI, and IX). The Court denies Plaintiff's motions to deny the Board's motion to dismiss [41 and 44]. The Court sets this matter for a status conference on 11/12/13 at 9:00 a.m. in Courtroom 1919 on the 19th floor of the Dirksen Federal Building.

Dated: October 16, 2013                                   _____
                                                                         Robert M. Dow, Jr.
                                                                         United States District Judge